CASE 32—PETITION ORDINARY—NOVEMBER 4.

## Phœnix Ins. Co. v. Stevenson.

APPEAL FROM SCOTT COURT OF COMMON PLEAS.

1. Appellant issued to appellee a policy of insurance upon his house for $3,000, providing that if he insured the house in any other company, without the consent of appellant, the insurance was to be void.  He insured the house in other companies, without the consent of appellants, and the house was burned.

2. *Held*, that it was not the duty of appellant, after being informed of additional insurance and the burning, to return the premium for the time the policy had to run from the burning till the expiration of the policy.

3. The fact that appellant, after notice of the burning and of additional insurance, requested appellee to write out and present his claim, was no waiver of the condition mentioned in the policy.

MESSRS. LINCOLN, SMITH & STEPHENS AND J. E. CANTRILL FOR APPELLANT.

1. The court erred in refusing a non-suit.  (Carroll v. Charter Oak Ins. Co., 38 Barb., 408; Diehl v. Adams Ins. Co., 58 Penn. St., 452; Viele v. Germania Ins Co., 26 Iowa, 9; Packard v. Sears, 6 Ad. & Cl., 469; Parson on Bills, 594; Story on Prom. Notes, sec. 280; Long vs. Young, 8 Eng. Ark., 401; Ins. Co. v. Wolf, 5 Otto, 326; 22 Mich., 473; 29 Iowa, 565; 7 Allen, 241; 66 Penn. St., 22; 58 Ibid., 444; Baer v. Phœnix Ins. Co., 4 Bush, 242; 7 Allen, 239; 29 Iowa, 562; 9 Md., 1.)

Phœnix Ins. Co. v. Stevenson.

2. The court erred in its instructions. (May on Ins., 711; Flanders Fire
   Ins., 155; 2 Arnold on Ins., 1215, 1224, 1226; 7 Ohio, 325; 4 Taunt.,
   330; Keel v. Ogden, 3 Dana, 107; Wing vs. Haydon, 280; Pollard
   v. Taylor, 2 Bibb, 234; Wood Fire Ins., 693, 709; 5 Hill N. Y. R.,
   421; 8 Johnson N. Y. R., 1; 3 B. & P., 191; 4 Camp., 297.)

W. DARNABY AND W. LINDSAY FOR APPELLEE.

1. The motion for a non-suit was properly overruled, and the instructions
   given contain the law. (May on Insurance, sec. 468; Manhattan
   Ins. Co. v. Stein, &c., 652; 52 Maine Rep., 492; 43 Barb. N. Y.,
   351; 28 Wis., 472; Walters v. Chin, 1 Met., 502; Plummer v. New-
   digate, 2 Duv., 1; Meriman on Plead., 246; Ill. Rep., 1877; Central
   Law Journal, 1877, p. 167; Wool on Ins., 176, 178; 43 Wiseman's
   Rep., 108; Baer v. Phœnix Ins. Co., 4 Bush, 242; Kenton Ins. Co.
   v. Shea, 6 Bush, 174.)

JUDGE HINES DELIVERED THE OPINION OF THE COURT.

A policy of insurance for $3,000, to run one year from
date, was issued October 25th, 1877, on a dwelling-house
belonging to appellee. On the same day, but subsequent to
the issuing, delivery, and acceptance of the policy issued by
appellant, appellee procured, in other companies, additional
insurance on the same property for the sum of $6,000. In
the policy issued by appellant it is provided, that "if the
assured shall have, or shall hereafter make any other insur-
ance on the property hereby insured, or any part thereof,
without the consent of the company written hereon, . . . .
then this policy shall be void."

No notice was given to appellant of the additional insur-
ance, nor was it known to it until after the destruction of
the property by fire, which occurred some two months after
the date of the policy.

Upon the refusal of appellant to pay the loss, this action
was instituted, appellant relying upon the breach of the
provision of the policy as to additional insurance, and ap-
pellee insisting that appellant had waived this right by requir-
ing appellee to make out and forward, after knowledge of

the insurance in other companies, a statement and proof of loss as provided for in the policy. The only evidence offered in support of the plea of waiver is the following letter by the general agent of the company to the local agent at the place where the property had been situated:

"CINCINNATI, Feb. 12th, 1878.

"H. S. RHOTON, ESQ., *Agent, Georgetown, Ky.:*

"DEAR SIR: We are in receipt of a sworn statement over the signature of Henry Stevenson, jr., the object of which we are unable to make out, for in no other place does he intimate that he holds a policy in this company; he furnishes us no written copy of any such a policy, and it is impossible for us to understand upon what he bases his claim, if such, in fact, was his purpose in sending the singular document to us. Be good enough to inform Mr. Stevenson that if he has any claim to make against this company, under or by virtue of a policy of insurance, such claim must be made in strict accordance with the conditions of said policy, to which he is respectfully referred. Please communicate the contents of this letter to Mr. Stevenson, in the presence of a witness, and if necessary, furnish him a copy thereof.

"Yours very truly,

"H. M. MAGILL, *Gen. Agent.*"

Subsequently the following letter was written to and received by appellee:

"CINCINNATI, March 8th, 1878.

"HENRY STEVENSON, JR., ESQ., *Georgetown, Ky.:*

"DEAR SIR: We are in receipt of a document over your signature purporting to be a statement, in addition to one formerly made by you, with reference to the loss of a certain dwelling by fire.

Phœnix Ins. Co. v. Stevenson.

"In response we would say that as yet it is impossible for us to understand the meaning of either the original statement or the addition thereto, taken separately or in connection with each other, and beg to repeat, if you have a claim against this company, it will be necessary to furnish proof of loss in accordance with the conditions of the policy, copy of which we hand you herewith.

"We desire now, however, to call your attention to the fourth paragraph of the conditions, in which the following clause appears: 'Or if the assured shall have, or shall hereafter make any other insurance on the property hereby insured, or any part thereof, without the consent of the company written herein, . . . then, and in every such case, this policy shall be void.'

"This condition is in the policy of this company now held by you, and has never been waived by the company or its agent, either directly or indirectly, and no consent for additional insurance had been given by written indorsement on the policy.

"At the time of the alleged burning of your dwelling-house, there was, as we learn from your sworn statement, the sum of six thousand dollars additional insurance thereon, without our knowledge or consent, or without the knowledge or consent of our agent, to-wit: the sum of three thousand dollars in the Liverpool, London and Globe Insurance Company, and the further sum of three thousand dollars in the Scottish Commercial Insurance Company, thereby rendering the policy of the Phœnix Insurance Company null and void, of which fact we hereby inform you, that your further actions may be governed accordingly.

"Respectfully,

"H. M. MAGILL, *Gen. Agent.*"

On the trial of the case, appellee was asked if he had not been put to considerable expense in preparing the statement: of loss made out after receipt of the letter of February 12, quoted above, to which he responded that he had paid $5; to the attorney to make out the statement, that he had paid. the hire of a horse and some tolls, but that he had been to no great expense. This evidence was excluded from the jury over the objection of appellee. The property was proved, over the objection of appellant, to have been worth. $14,000 or $15,000, and appellee was also, against objection,. permitted to state that no part of the premium had been. tendered or paid back to him.

At the close of the evidence introduced by appellee, which embraced the letters of March 8th, 1878, and of February 12, 1878, appellant moved to instruct the jury as in case of non-suit, which motion the court overruled, and after the evidence for appellant had been heard, under instructions. given by the court, and excepted to by appellant, the jury found for appellee the full amount of the policy.

Among the instructions given are the following:

" 1. If the jury believe, from the evidence, that the plaintiff, after the execution of the policy sued on, took out additional insurance on his dwelling-house in other companies, without the written consent of defendant indorsed on said. policy, then the jury ought to find for the defendant, unless. they believe, from the evidence, that after the burning of plaintiff's house, the defendant, on being informed of the fact that additional insurance had been taken thereon by plaintiff, failed to return the premium for the time the policy had to run from the time of the fire to the date fixed for its expiration; and also believe that the defendant, after being informed of the burning of plaintiff's house, and the

fact that plaintiff had insured said house in another company or companies, requested plaintiff to prepare and present his. claim against the company on account thereof, in accordance with the terms of the policy, in which event the law is. for the plaintiff, and the jury should so find.

"3. The breach in the condition in the policy against additional insurance imposed on the defendant, on being informed thereof after the loss, the duty to elect whether it must insist on a forfeiture of the policy and return the unearned premium received on the risk, or waive its right to. insist on said forfeiture, and regard the policy as still valid. and obligatory.

"The failure to return the premium after the knowledge of the fact that the additional insurance was obtained on the plaintiff's house, and a request, after being informed of the loss, if such request was made, to the plaintiff to make out any claim he might have against the company in accordance with the provisions of the policy as to proof of loss, amount to an election to waive the forfeiture and to consider the policy as valid and obligatory."

The instruction marked No. 1 is erroneous, first, because it tells the jury that appellant could not rely upon the forfeiture resulting from additional insurance on account of its. failure to return to appellee a certain proportion of the premium; second, in assuming that there was any evidence to show a request on the part of appellant to appellee to prepare and present his claim against the company, and that such a request was a waiver of the right of appellant to rely upon the forfeiture.

The third instruction is erroneous in holding that the failure to return the premium, and that the request, if made, to make out his claim against the company, operated as a

waiver by appellant of the breach in the policy as to additional insurance.

The act or conduct of the company, in order to operate as a waiver of its right to rely upon the breach as a release from liability, must be such that the insured might reasonably infer therefrom that the company did not mean to insist upon the forfeiture. The insured must have been misled to his prejudice, and if he is so misled by a reasonable and justifiable reliance upon the acts or conduct of the insurer, the waiver or estoppel attaches, whether it was so intended by the insurer or not. In general, to work an estoppel the party against whom it is attempted to be used must be in possession of all the facts, and the party attempting to plead it must have relied upon the representation or conduct of the party against whom the plea is interposed, and must thereby have been misled to his prejudice. (May on Insurance, sections 505 and 507.)

The letter of the 12th of February, 1878, is not a request to appellee to make proof of his claim against the company. After stating that it was impossible to determine from the paper sent to the company what the object of appellee was in sending it, for it did not even state that appellee held a policy in the company, the writer continues: "Be good enough to inform Mr. Stevenson that if he has any claim to make against this company, under or by virtue of a policy of insurance, such claim must be made in strict accordance with the conditions of said policy, to which he is respectfully referred." When appellee made his first abortive effort at proof of his claim, he was fully aware that, by his own conduct in taking out other insurance, he had forfeited his claim against the company. Possessing this knowledge, it is difficult to conceive how appellee, from the contents of this let-

ter, could have inferred that appellant intended to waive any substantial or technical defense it might have. On the contrary, it appears to be a direct challenge and a notification to appellee that appellant would not pay the loss unless appellee had complied in every particular with the conditions of the policy. But it is said that appellant also knew of the additional insurance. That is true, yet the company was not called upon to act in the premises until appellee asserted claim against it—its mere silence could not operate as a waiver of any of its rights—and so soon as appellee did present proof, though defective, of his supposed claim, appellant, by the letter of March 8th, 1878, notified appellee that he had not complied with the conditions of his policy, and that the company would rely upon the forfeiture brought about by the other insurance procured without its knowledge or consent. It was the duty of appellee, under the terms of the contract of insurance, to have prepared at his own expense and presented to the company any intelligible proof of his claim. Failing to do this in the first instance, he ought not to be heard to say that the expense incurred by him in the attempt to perfect his proof, which by no fault of the company was defective, and which expense was not incurred at the request or by the solicitation of the company, should estop appellant from relying upon a forfeiture brought about by the conduct alone of appellee. This is essentially unlike the case where, during the continuance of the risk, the insurer is notified, even orally, of other insurance, and yet gives no notice to the insured that the insurer considers the contract of insurance at an end on account of such breach on the part of the insured. In that instance, the insured might be authorized to consider such silence on the part of the insurer, especially if continued for any considerable time

·after such notice, as a waiver of the right to insist on the forfeiture.    In such case the insured might, with plausibility, ·say that if you had, before my loss, notified me of your in-·tention to insist upon the forfeiture, it would have been in ·my power to protect myself by other insurance, and as you have waited until the damage has resulted, being in full pos-·session of all the facts, you ought not now be permitted to ·rely upon the forfeiture.

This case is also essentially unlike the case where the notice ·to the insurer comes after the loss, and specific exceptions are taken by the insurer to certain defects in the proof, with-·out notice of intention to rely upon the forfeiture, and when ·the notice to the insured is accompanied by a request to incur onerous expense, which is in fact incurred, but is not ·essential to making out proof of claim in the ordinary form.

In Webster v. Phœnix Insurance Company (36 Wisconsin, ·71), relied upon by counsel for appellee, the court says: ·"The question before us in the present case is, whether the ·facts that the defendant required the plaintiff to furnish ·plans and specifications of the insured house, after notice of ·the additional insurance, and that the plaintiff furnished the same, or procured them to be prepared, at large expense, pursuant to such requirement, are sufficient evidence of a waiver of the condition, and estop the defendant from as-serting that the policy was forfeited because its consent was not obtained to such additional insurance."    In that case the following letter was relied upon and held by the court to be a waiver, to-wit:

"CINCINNATI, February 7th, 1873.

"*H. D. Fisher, Esq.*:

"DEAR SIR: Your favor of the 4th inst., accompanying ·certain documents in the claim of Mrs. Helen F. Webster,

is received. As proofs they are by no means satisfactory, and as one of the points of deficiency we may mention that it is not shown what the actual worth of the property was, as covered by our policy. You will please inform Mrs. H. F. Webster that in accordance with the conditions of our policy, we require full plans and specifications of the house destroyed, which, when ready, may be sent to this office."

In that case, as here, the policy contained this provision, to-wit: "It shall be optional with the company to repair, rebuild, or replace the property lost or damaged, with other of like kind and quality within a reasonable time, giving notice of their intention so to do within thirty days after receipt of proofs herein required; and the assured shall, if required, furnish plan and specifications of the building destroyed." There the plan and specifications were not necessary to complete the proof of loss, and good faith and fair dealing required that they should not be demanded of Mrs. Webster (at the cost of $200 as shown) unless the company intended to pay the amount of the policy or rebuild. In that case there was a clear intimation, on which Mrs. Webster had a right to rely, that when the proof of loss should be presented in the form required by the policy, and plan and specifications furnished, the company would pay the amount of the policy or replace the buildings. That case, when carefully considered, does not, as counsel appear to think, come in conflict with the views we have herein expressed.

Nor does it appear that Gaus v. The St. Paul Fire and Marine Insurance Company (43 Wisconsin, 110) is antagonistic. In that case there was a stipulation in the policy against allowing the property insured to be vacant, with a penalty of the forfeiture of the policy. With the knowledge

of the company, the property remained unoccupied near a month before it was destroyed by fire. On proof of loss being forwarded to the company, it was held insufficient, and the company requiring further proof, it was prepared and forwarded at a cost of five dollars, which last proofs contained a statement that the building had been vacant as above stated. Without comment on the reasoning of the court, we are satisfied that the opinion may be supported upon the ground that the company did not give notice of disapproval, as it might have done, in time to enable the insured to procure additional insurance. Such prolonged acquiescence before loss might be held to be a waiver because it had a tendency to lull the insured into a feeling of security, and thus prevent him from protecting himself by getting new insurance.

The case of the Kenton Insurance Company v. Shea & O'Connell (6 Bush) does not support the view of counsel for appellee. Two policies were obtained the same day, November 15th, 1867, in two different companies, on the same property, and from the same agent. The loss occurred on the 23d of January, 1868. Appellant in that case issued the first policy, and there was evidence going to show that it received one premium after notice of the issuing of the second policy and before loss. The court on this state of facts say: "Under all the peculiar circumstances of this case, we cannot doubt that the evidence, the equity, and law of the case all conspire to fix appellant's liability."

To the same effect, and based upon similar facts, is the opinion in Von Bories v. The United Life, Fire, and Marine Insurance Company (8 Bush, 136). Partly in support, and in no way in conflict with the views we entertain, is the case of Baer v. The Phœnix Insurance Company (4 Bush, 244).

Does the fact that appellant failed to return any portion of what is called the unearned premium preclude it from relying upon the forfeiture? We are decidedly of the opinion that it does not. In May on Insurance, section 567, it is said: "If a policy be void *ab initio*, or if the risk never attaches, 'and there is no fraud on the part of the insured, and the contract is not against law or good morals, he may recover back all the premium he may have paid, either in an action for them alone or on account for money had and received, coupled with a count on the policy in an action for the loss. . . . . . *But if the risk once attaches, the premium is not apportionable.*" (Flanders on Fire Insurance, second edition, page 170.)

In the case under consideration the contract was entire. The risk attached the moment the contract of insurance was completed, so that if the loss had occurred before the obtention of the other insurance, appellant would have been compelled to pay the loss to the extent of its liability, as stated in the contract. Appellant was entitled to rely upon the forfeiture without a return or the offer to return any portion of the premium. The instruction as to the return of the premium may have been based, partly at least, upon the following clause in the policy: "This policy may be canceled at any time, on giving a verbal notice to that effect, and refunding or tendering a ratable proportion of the premium for the unexpired term." We think that the clause does not justify such a construction. It appears to apply only in cases where the insurer sees fit to cancel the policy, and not to cases where there is a forfeiture resulting from the act of the insured.

We are of the opinion that there was no evidence to go to the jury on the question as to waiver of the forfeiture by appellant, and that the motion for a non-suit should have been sustained. The instructions were also erroneous because based upon the idea that there was evidence to support the plea of waiver, and upon the supposition that appellant was compelled, as a condition precedent, to rely upon the forfeiture to return a proportional part of the premium.

Whatever defect there may be in the manner of pleading the waiver, we are satisfied that the defect is cured by the reply, and an issue substantially tendered on that point.

Judgment reversed, and cause remanded, with directions for further proceedings consistent with this opinion.